[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14437
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cv-00640-WKW-GMB

DARRELL SUMLIN,

                      Plaintiff - Appellant,

versus

DR. DYJERLYNN LAMPLEY-COPELAND,

                      Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(December 10, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Darrel Sumlin, a federal prisoner, appeals *pro se* the summary judgment against his complaint that Dr. Dyjerlynn Lampley-Copeland, the former medical director at the Staton Correctional Facility, was deliberately indifferent to Sumlin's medical needs in violation of the Eighth and Fourteenth Amendments. 42 U.S.C. § 1983. Sumlin challenges the denial of his motions for appointment of counsel and the entry of summary judgment without additional discovery. We affirm.

## I. BACKGROUND

Sumlin complained that, on July 5, 2012, Dr. Copeland deliberately delayed treatment while he suffered a stroke, which resulted in partial paralysis of the left side of his body. Sumlin alleged that he reported experiencing weakness and numbness on his left side while at trade school and that prison personnel took him to the health care clinic at Staton. As Sumlin entered the clinic, he announced that his left side was numb, he was having a "mini stroke," and he needed to be transferred to a "free world hospital." Sumlin alleged that Dr. Copeland responded from an adjacent room that she would decide whether to send Sumlin to the hospital and instructed a nurse practitioner to examine Sumlin in a holding cell. The nurse practitioner recorded that Sumlin's blood pressure was high and that he was complaining about his strength diminishing on his left side and submitted the information to Dr. Copeland. According to Sumlin, he waited three to four hours before a nurse walked past his cell. Sumlin told the nurse that he could not move

2

his left arm or leg and she noticed that his "face was looking droopy." Forty-five minutes later, the nurse returned to Sumlin's cell with two security guards who transported him to Jackson Hospital in Montgomery, Alabama.

A magistrate judge ordered Dr. Copeland to submit a special report containing her response and evidence regarding Sumlin's treatment. Dr. Copeland argued that Sumlin's prison medical records, which she attached to her report, established that Sumlin received "prompt, regular access to care" and, on the day of his incident, he was "regularly evaluated . . . to monitor and address his complaints" and "changes in [his] medical condition." Dr. Copeland also prepared an affidavit that described Sumlin's extensive "treatment for various significant medical conditions," including "hypertension" and "chronic obstructive pulmonary disease," and the complexity of his illness.

The doctor averred that Sumlin "was ultimately diagnosed as experiencing . . . a 'transient ischemic attack,'" which is difficult to identify because it may "not [be] accompanied by any signs or symptoms" and often requires "diagnostic radiological testing" to determine whether symptoms are attributable to "an ischemic event or some other underlying medical condition." Dr. Copeland also averred that Sumlin's medical records showed that the intake nurse and a nurse practitioner recorded Sumlin's symptoms as atypical of a stroke; that the nurse practitioner reported her findings to Dr. Copeland, who ordered continued

monitoring; and that, after learning Sumlin had developed difficulty walking, Dr. Copeland ordered the staff to transfer him to Jackson Hospital. Dr. Copeland stated that she "was not even aware of [Sumlin's] presence in the Staton Health Care Unit until [she] was notified by the nurse practitioner after her initial evaluation" and that Sumlin remained in the clinic "less than 90 minutes." Dr. Copeland also stated that, after the hospital discharged Sumlin, he had "left sided 'weakness'" and received physical therapy, in May 2013, he suffered another transient ischemic attack that affected the right side of his body, and in October 2013, he experienced numbness in his right arm.

Sumlin's treatment notes stated that the intake nurse evaluated Sumlin at 11:40 a.m. when he had a "steady gait." Sumlin reported that he had "numbness and heaviness on [his] whole l[eft] side" and that he came to the clinic because "DOC made me come." The nurse practitioner recorded at 12:35 p.m. that Sumlin reported "feel[ing] a heavy sensation" and his "speech is funny." An examination revealed that Sumlin had a "mild weakness [on his] left side," "slight facial asymmetry around [his] mouth," he had "negative [results for a] Romberg" neurological coordination evaluation, and his "gait [was] steady[,] but [he had] a slight limp [or] slight drag to leg." The nurse practitioner "discussed [Sumlin] with Dr. Copeland," who ordered further "monitor[ing]." At 12:55 p.m., Sumlin reported that he could not walk and the nurse practitioner observed that Sumlin

4

was "holding [left] side in [a] guarded position" and "need[ed] assistance to ambulate." The nurse practitioner reported her observations to Dr. Copeland, who at 1:05 p.m. "instructed to send [Sumlin] [by] DOCC van to Jackson Hospital."

The magistrate judge ordered Sumlin to "file a response addressing each of the arguments . . . contained in [the written] report" within 21 days. The magistrate judge warned that "the court may treat [the] report and [Sumlin's] response as a dispositive motion and response" and advised Sumlin "in preparing a response to the special report . . . [to] refer to the requirements of Rule 56, *Federal Rules of Civil Procedure*." Because "[t]he claims contained in the complaint fail[ed] to establish a violation of [Sumlin's] constitutional rights by [Dr. Copeland]," the magistrate judge advised Sumlin to "not rely only on his . . . unsworn pleadings but [to] respond by filing sworn affidavits . . . or other evidentiary materials developed through discovery or other appropriate means and which set forth specific facts demonstrating there is a genuine issue of material fact for trial in this case." The magistrate judge cautioned that, unless Sumlin "file[d] a response in opposition which presents sufficient legal cause why such action should not be undertaken, . . . the court may . . . without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a . . . motion for summary judgment and (2) after considering any response . . ., rule on the motion in accordance with the law."

Sumlin twice moved unsuccessfully for the appointment of counsel. Sumlin argued that his lack of education and legal knowledge, his physical impairments, his infrequent access to the legal library, and the complexity of his case entitled him to counsel. The magistrate judge denied Sumlin's motion on the grounds that he was "able to adequately articulate the facts and grounds for relief . . . without notable difficulty," that his "complaint [was] not of undue complexity and that he [had] not shown that there are exceptional circumstances justifying appointment of counsel." The magistrate judge stated that Sumlin's "request may be reconsidered if warranted by further developments in this case." Sumlin immediately filed a second motion to appoint counsel that repeated the arguments made in his first motion. The district court denied Sumlin's "second request . . . for the reasons stated" in its earlier order.

The magistrate judge granted Sumlin an extension of time that he used to prepare an opposition and a supplemental opposition to the special report. Sumlin submitted an affidavit stating that Dr. Copeland neglected him, understated the time that he waited for treatment, failed to examine him, and ignored his symptoms. Sumlin argued that Dr. Copeland exhibited "an indifferent and hostile attitude" by ordering Sumlin to be held in a cell while he presented symptoms of a stroke and by withholding "emergency[] treatment." Sumlin also argued that he could prove his case with "legal help," "Declarations, affidavit, login [and] logout

sheets from D.O.C. records[,] and personnel who witness[ed] the incident." Sumlin attached to his opposition an incident report, a duty officer report, and his prison medical grievance.

The magistrate judge recommended that the district court enter summary judgment in favor of Dr. Copeland. The magistrate judge accepted as true Sumlin's allegations that Dr. Copeland heard Sumlin enter the clinic, verbally disregarded Sumlin's self-diagnosis, directed a nurse to place Sumlin in a holding cell, and did not examine Sumlin before ordering him transported to the hospital. The magistrate judge also credited the treatment notes recorded by the nurse and nurse practitioner as "objective medical records contemporaneously compiled during the treatment process." The magistrate judge concluded that "Dr. Copeland's actions did not constitute deliberate difference" because medical staff "responded appropriately to Sumlin's medical condition" by "respond[ing] to his complaints, evaluat[ing] his condition, and provid[ing] care consistent with his presenting symptoms." The magistrate judge ruled that Sumlin's "unsubstantiated opinions about the quality of the medical care he received" and his "self-serving statements of a lack of due care and delay of necessary medical treatment [did] not create a question of fact in the face of contradictory, contemporaneously created medical records." And the magistrate judge highlighted that Sumlin "provided no evidence that the medical care and treatment he received . . . was inadequate or indicative of

a disregard of a substantial risk of harm to his health and well-being" or "exacerbated his condition."

Sumlin objected to the report and asked to "get more evidence," but the district court overruled the objections and entered summary judgment in favor of Dr. Copeland. The district court ruled that "the Recommendation correctly found that the evidence [Sumlin] submitted . . . is insufficient to create a dispute as to any material fact in the face of the evidence produced by [Dr. Copeland]." The district court explained that Sumlin was not entitled to postpone a ruling to conduct discovery when he failed to "give[] any indication of what evidence he hopes to obtain in discovery or how such evidence would create a genuine dispute as to any material fact." The district court also rejected summarily Sumlin's argument that Dr. Copeland acted with deliberate indifference.

## II. STANDARDS OF REVIEW

Two standards of review govern this appeal. We review the refusal to appoint counsel for abuse of discretion. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). We construe *pro se* pleadings liberally and hold them to a less stringent standard than those prepared by attorneys. *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018). We review *de novo* a summary judgment. *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1278 (11th Cir. 2017). Summary judgment is appropriate when there exists no genuine factual dispute and the movant is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(a). To make that determination, we view the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Nam Dang*, 871 F.3d at 1278.

### III. DISCUSSION

Sumlin makes two arguments. First, Sumlin argues that his lack of education entitled him to the appointment of counsel. Second, Sumlin argues that Dr. Copeland acted with deliberate indifference to his serious medical need by delaying treatment for his stroke.

The refusal by the district court to appoint counsel was not an abuse of discretion. The appointment of counsel in a civil case is "a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues which are so novel or complex as to require the assistance of a trained practitioner." *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (internal quotation marks and citation omitted) (alteration adopted). Sumlin's complaint that Dr. Copeland acted with deliberate indifference was neither novel nor complex. Sumlin had firsthand knowledge about his treatment, alleged the salient facts in his complaint, and responded to Dr. Copeland's report with a response and documents of his own. Although Sumlin, "like any other litigant[], undoubtedly would have been helped by the assistance of a lawyer, . . . [his] case is not so unusual that the district court abused its discretion by refusing to appoint counsel." *Bass*, 170 F.3d at 1320.

The district court also did not err by entering summary judgment in favor of Dr. Copeland and against Sumlin's complaint of deliberate indifference. To prevail, Sumlin had to prove that Dr. Copeland had subjective knowledge that Sumlin was having a stroke and disregarded that risk, *see Nam Dang*, 871 F.3d at 1279, by acting with "obduracy and wantonness, not inadvertence or error in good faith," *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Sumlin contends that Dr. Copeland "kn[e]w beyond a reasonable doubt that [Sumlin's] condition was serious" based on his declaration that he was having a stroke, but the medical staff was not obligated to act on Sumlin's self-diagnosis. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977), for the proposition that "the propriety or adequacy of a particular course of treatment" is "a question of sound professional judgment"). Sumlin also argues that Dr. Copeland's brusque demeanor suggests that she was deliberately indifferent, but the doctor's attitude did not result in a refusal of treatment for Sumlin or even a delay in his treatment. *See Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991) (stating that deliberate indifference requires "the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment.").

"[P]rison officials who actually kn[o]w of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk,

even if the harm ultimately was not averted," *Farmer v. Brennan*, 511 U.S. 825, 844 (1994), and the medical staff responded reasonably to Sumlin's request for treatment. Sumlin underwent examinations by the intake nurse at 11:40 a.m. and by a nurse practitioner at 12:35 p.m. and neither detected symptoms of a stroke. *See id.* The determination that Sumlin did not require immediate transportation to a hospital does not reflect that he received "medical care . . . so cursory as to amount to no treatment at all." *See Nam Dang*, 871 F.3d at 1280 (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)). When the nurse practitioner reexamined Sumlin at 12:55 p.m., she observed that he could not walk, and reported her findings to Dr. Copeland, who ordered Sumlin transported to the hospital at 1:05 p.m. The treatment Sumlin received was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See id.* (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Sumlin faults Dr. Copeland for failing to detect the signs of a stroke, but that alleged error amounts, at most, to negligence or medical malpractice, not deliberate indifference. *See Howell*, 922 F.2d at 719 ("[T]he mere negligent diagnosis or treatment of a patient does not constitute deliberate indifference.").

Sumlin argues that Dr. Copeland's failure to "elevate [hi]s status . . . to serious" resulted in him receiving slower transportation by security services instead of by ambulance, but Sumlin's argument is controverted by the record.

11

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The duty officer report that Sumlin attached to his opposition states that "Security Service transported Inmate Sumlin due to shortage of security personnel."

Sumlin also argues that Dr. Copeland "did not ask for summary judgment, [and] the Magistrate Judge took it upon himself to assume what [Dr. Copeland] wanted and that . . . is an abuse of dis[cretion] on behalf of the district court," but we disagree. Dr. Copeland requested a judgment in her favor by asserting in the conclusion of her special report that Sumlin had "fail[ed] to identify any sustainable, meritorious claim against [her]." We have affirmed converting a special report into a motion for summary judgment in *Coleman v. Smith*, 828 F.2d 714, 716 (11th Cir. 1987), because the *pro se* inmate received "notice [that was] required prior to the granting of summary judgment." In *Coleman*, the magistrate judge informed the inmate of his rights to file counter-affidavits within a specific deadline and to object to the magistrate judge's report recommending summary judgment in the defendant's favor before the district court entered a "final ruling." *Id.* at 716–17. Sumlin received explicit notice that Dr. Copeland's special report could be converted into a motion for summary judgment. The magistrate judge

12

gave Sumlin 21 days to respond to the special report, advised him that the report could be treated "as a dispositive motion" and as a "motion for summary judgment," suggested that he refer to Federal Rule of Civil Procedure 56 to prepare his response, and explained that his evidence had to establish "there is a genuine issue of material fact for trial in this case." Sumlin responded to the special report and submitted evidence of his own. The district court did not abuse its discretion by converting the special report into a motion for summary judgment.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Dr. Copeland.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 10, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-14437-CC
Case Style: Darrell Sumlin v. Dyjerlynn Lampley-Copeland
District Court Docket No: 2:14-cv-00640-WKW-GMB

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, CC at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs